**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

WENDA HARBOUR
    Vs.
                                      C.A. No.    2021 CA 002184 B
UNIVERSITY CLUB OF WASHINGTON DC AND ITS BOARD OF

## INITIAL ORDER AND ADDENDUM

### Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.

No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge SHANA FROST MATINI
Date:    July 2, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, October 01, 2021
Location:  Courtroom 517
              500 Indiana Avenue N.W.
              WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,    "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.   Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

CAIO-60





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                          Demandante
        contra

_____                          Número de Caso: _____
                          Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                          *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                      Por: _____
_____
Dirección                                        Subsecretario

_____

_____                     Fecha _____
Teléfono
如果您需要翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bản dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202) 879-4828 로 전화주십시오          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                          Super. Ct. Civ. R. 4

Filed
D.C. Superior Court
05/08/2021 15:02PM
Clerk of the Court

## IN THE SUPERIOR COURT
## FOR THE DISTRICT OF COLUMBIA

WENDA HARBOUR,                )
7844 River Rock Way,          )
Columbia, MD 21044            )
                              )
    *Plaintiff,*               )   Case No.  2021 CA 002184 B
                              )
v.                            )
                              )   Jury Trial Demanded
UNIVERSITY CLUB OF            )
WASHINGTON DC                 )
And it's BOARD OF GOVERNORS )
1135 16th St. NW              )
Washington, DC 20036          )
                              )
                              )
    *Defendant.*               )
_____)

### COMPLAINT

Comes now Plaintiff, *Wenda Harbour* (hereinafter "Plaintiff" or "Ms. Harbour"),

by and through undersigned counsel, with this Complaint for compensatory, equitable

and declaratory relief against her employer University Club of Washington, DC

(hereinafter "Defendant" or "UCLUBDC"), asserting wage theft in violation of the

District of Columbia Wage Theft Prevention Act of 2014, DC Code § 32-1301. et seq.,

violation of the Accrued Sick and Safe Leave Act, DC Code § 32-531.01, unlawful

discrimination and retaliation on the basis of race, gender and disability, in violation of

the District of Columbia Human Rights Act, DC Code § 2-1401.01 et seq., negligence

and negligent infliction of emotional distress, and negligent supervision and states as

follows:

1

## PARTIES

1.      Plaintiff Wenda Harbour is an African American woman with a disclosed disability, who has been employed by UCLUBDC since October of 2018.

2.      Defendant UCLUBDC is a private club with more than 2,000 members and is also a place of public accommodation that is governed by a Board of Governors, receives dues for membership, and serves as a venue to the larger public for events and receptions. UCLUBDC is a District of Columbia entity with its principal place of business located at 1135 16th St. NW, Washington DC  20036.

## JURISDICTION AND VENUE

3.      This Court enjoys subject matter jurisdiction over the matter as all actions that are the subject of this Complaint took place in the District of Columbia, Defendant is a resident of the District of Columbia, and all claims herein are brought pursuant to the law of the District of Columbia.

4.      Venue in the District of Columbia is appropriate because all documents relevant to Plaintiff's claims are located in the District of Columbia, as are witnesses to the events and actions that are the subject of the claims herein.

## RELEVANT FACTS

5.      Plaintiff has been employed by UCLUBDC since October of 2018 as Director of the Events Department, which is a full-time exempt employee role.

6.      At the time she was hired, UCLUBDC had six (6) Department Directors.  Plaintiff was and remains the only African American woman Director.

2

7.      Plaintiff has thirty (30) years of experience in full life-cycle event management, strategic planning, organizational operations, sales and marketing, and corporate communications.

8.      As Director of the Events Department, her job responsibilities include managing the Event Department's operations, event sales, marketing, planning, and staffing the oversight of execution of banquet services for private and member events.

9.      Plaintiff was subject to work rules and procedures that were outlined in the UCLUBDC Employee Handbook.

10.     At the time she was hired, Plaintiff had sixteen (16) direct reports, including the Banquet Manager, Ahmad Nahgbi, and Assistant Banquet Manager Walter Gutierrez, who were responsible for executing Plaintiff's plans and directions for scheduled events, and supervising the banquet staff of the venue.

11.     Plaintiff's job responsibilities were primarily to work with patrons who booked the club's facilities for events, to work out the details of the venue set up, catering needs, decoration and other event details, and to price out the requirements, communicate the event plans to her subordinates, and ensure that the events go smoothly.

12.     The majority of this work was done by phone calls and electronic mail. Plaintiff was typically at the venue at the start of events, but did not actually have to be there for the duration of events, even if UCLUBDC preferred for her to be present at events.

13.     Because of the nature of her planning work, and because, unlike other Directors, Plaintiff was not given a private office from which to work, Plaintiff often worked remotely from her home office.

3

14.     Plaintiff was given the ability to work remotely almost immediately after her hiring, in November of 2018. That is when she was provided the UCLUBDC computer network credentials to work remotely as needed.

15.     Plaintiff frequently worked remotely as often as several days every week, from November 2018 until the COVID pandemic (hereinafter "COVID") hit the District of Columbia.

16.     Current UCLUBDC General Manager, Brian Donohoe (hereinafter "Mr. Donohoe"), was aware of the fact that Plaintiff worked remotely from home on multiple occasions, as was UCLUBDC Human Resources Manager Paula Clarke; they both approved Plaintiff to be fully compensated for the days when she worked from home.

17.     From October 2018 to February of 2020, Plaintiff was so effective in her role as Director of Events that revenue from that Department increased by approximately 25%.

18.     However, in early 2020, the Banquet Manager, and the Banquet Captain, both of whom were subordinate to and reported to Ms. Harbour, resigned from UCLUBDC. Plaintiff, therefore, conducted their tasks as well with the understanding that those roles would be filled.

19.     Before their positions could be filled, COVID struck the District of Columbia. On or about March 16, 2020, UCLUBDC closed to the public due the national COVID pandemic. Nevertheless, the management team was expected to work remotely, responding to correspondence from members and customers, and carrying out other important business-related work.

20.     On or about April 22, 2020, essential public-facing workers returned to work, while some managers and coordinators continued to work remotely.

4

21.     UCLUBDC informed essential staff that they were going to be paid 75% of their full salary, as a cost-cutting measure, while UCLUBDC operations were curtailed.

22.     On information and belief, this 25% pay cut was not actually applied to all salaried staff, or for the same amount of time.  Rather, UCLUBDC continued to pay some salaried staff their full salary, and reinstated full salary to others sooner, based on purely subjective decision-making by Mr. Donohoe.

23.     On information and belief, Plaintiff was paid less or underpaid during this period, as compared to other Directors who were not African American women.

24.     On or about June 1, 2020, approximately thirty (30) staffers were required to return to in-person work, scheduled Tuesdays through Fridays, and were allowed to work remotely on Mondays.

25.     Plaintiff suffers from several chronic health conditions, including Chronic Obstructive Pulmonary Disease (hereinafter "COPD"), which is an auto-immune condition that renders Plaintiff very susceptible to respiratory illness.

26.     Plaintiff disclosed to Defendant that she suffered from COPD, and other conditions, and Defendant was aware of Plaintiff's health conditions prior to the COVID outbreak.

27.     On or about June 17, 2020, Plaintiff asked UCLUBDC for a reasonable accommodation based on the recommendation of her personal physician, of being allowing her to continue to work remotely to minimize her potential exposure to the COVID.  Plaintiff's request was supported by a letter from her medical provider.

28.     At the time, there was no vaccine available, COVID was spreading rampantly, and even the wearing of masks and social distancing was not 100% effective in preventing transmission of the virus.

29.     Given the deadly nature of COVID, particularly for those who hand underlying conditions that would make them more vulnerable to the virus and prone to severe, life-threatening illness, Plaintiff's physician recommended that she be permitted to work remotely and avoid public spaces as much as possible. This was the only accommodation available at the time that would effectively protect Plaintiff from exposure.

30.     The following day, on or about June 18, 2020, former General Manager Brian Conroy (hereinafter "Mr. Conroy") and Ms. Clarke met with Plaintiff, however, rather than engaging in an interactive process to enact the doctor-recommended accommodations, they insisted that Plaintiff be present on site for events, even though her presence was not needed once the event planning was completed.

31.     Additionally, in the conversation that took place on or about June 18, 2020, Mr. Conroy and Ms. Clarke threatened Plaintiff with demotion to Banquet Manager (a position that had previously reported to her) and to cut her pay by $27,000. Notably, Mr. Conroy and Ms. Clarke pointed out that as Banquet Manager, Plaintiff would have to do her work on-site.

32.     Plaintiff reminded Mr. Conroy and Ms. Clarke during the meeting that the Banquet Manager position had been vacant for months, and that she had already absorbed the Banquet Manager and Banquet Captain responsibilities, so a demotion would make no sense and serve to penalize her unnecessarily.

33.    Plaintiff also reminded Mr. Conroy and Ms. Clarke of the disability accommodation recommended in the correspondence from her physician, pointing out that what Mr. Conroy and Ms. Clarke were suggesting would put her health at immediate risk.

34.    During a follow-up meeting, Ms. Clarke emphasized to Plaintiff that UCLUBDC did not have a "work-from-home policy," and that regardless of her high-risk health condition the club needed people in-house every day in case there was a need in any department.

35.    Plaintiff responded that her need to work from home was not a question of convenience, but rather a necessary and reasonable accommodation of a serious health condition and disability under the laws of the District of Columbia Human Rights Act.

36.    Despite the recommendation of Plaintiff's physician, and the out-of-control spread of COVID and escalating number of deaths, Defendant nevertheless insisted that Plaintiff be on site during events, and insisted that she come into the facility, even when such was not required, in direct abrogation of the recommendation of Plaintiff's physician.

37.    On or about November 10, 2020, Ms. Harbour was exposed to COVID at an event held at UCLUBDC.  The guest speaker at the event tested positive and informed Mr. Donohoe.

38.    Mr. Donohoe asked the Member Events Manager at the event if she had been wearing a mask.  Because the staffer stated that she had been wearing a mask, Mr. Donohoe directed that employee not to say anything, and chose not to immediately inform Plaintiff of her potential exposure to COVID.

7

39.     Nevertheless, several persons at the event did end up testing positive for COVID, and on or about November 23, 2020, UCLUBDC informed all employees by written letter that they had been exposed to COVID, and that they all should quarantine for two weeks or until they could obtain a negative COVID test.

40.     On or about November 14, 2020, four days after the date Plaintiff was exposed to COVID, she developed a severe upper respiratory and sinus infections, and other debilitating conditions that kept her extremely ill for more than five (5) weeks.

41.     While the COVID test Plaintiff took came up negative, the tests were not infallible, and Plaintiff's symptoms caused her great fear and emotional distress, given her underlying condition.

42.     Because so many staffers were diagnosed with COVID from that event, the entire Food & Beverage operation at UCLUBDC was closed down for several weeks.

43.     Even though Ms. Harbour was convalescing and recovering from the respiratory infection at home, she was nevertheless still carrying out her work, being able to do so effectively from her remote location.

44.     On or about December 8, 2020, Mr. Donohoe and Ms. Clarke started demanding that Plaintiff return to working on site, even though she was completing her tasks remotely, and despite the fact that they had no way of assuring Plaintiff that she would not again be exposed to COVID.

45.     Before risking her health again, Plaintiff sought guidance from her physician about what to do. By letter dated December 17, 2020, Plaintiff's physician recommended that Plaintiff continue to work from home until she could be vaccinated and until she was back to full strength.

8

46.     Mr. Donohoe and Ms. Clarke were not pleased with this recommendation and mentioned to Plaintiff on several occasions that UCLUBDC did not have a "work-from-home policy." At no time did either Mr. Donohoe or Ms. Clarke admit or recognize that Plaintiff was working from home as an accommodation of her disability, not as a convenience.

47.     On information and belief, several other employees, including Department Directors who were similar situated, were allowed to work exclusively or principally from home, without reprisal or censure from Mr. Donohoe or Ms. Clarke.

48.     Plaintiff is the only African American woman Department Director and was singled out to be pressured to return to on-site work because of her race and her gender.

49.     Plaintiff was singled out to be pressured to return to on-site work, when such was not necessary, as retaliation for her request for a reasonable accommodation.

50.     On or about December 9, 2020, Mr. Donohoe and Ms. Clarke started requiring Plaintiff to record her full 8-hour workdays as 4-hours of work and 4-hours of sick time, regardless of the hours she worked.

51.     Per the UCLUBDC handbook, sick leave is earned and accrued paid time off, and is a benefit that employees are entitled to, based on time worked.

52.     Ms. Clarke told Plaintiff that she would no longer accept timesheets from Plaintiff that reflected her actual hours worked without pre-approval from Mr. Donohoe.

53.     At no point did Ms. Clarke or Mr. Donohoe state to Plaintiff that she had been demoted, or that her position was being converted into a part-time position. Rather, by correspondence, they indicated that half of Plaintiff's worked time would not be

9

compensable because she was working from home, in accordance with the accommodation she requested, and that was recommended by her physician.

54.     Mr. Donohoe and Ms. Clarke made it patently clear to Plaintiff that if she wanted to be fully and fairly compensated for her work, she would have to complete her tasks on-site.

55.     At the time, the Plaintiff's work resulted in the UCLUBDC events starting to get busy again, and Plaintiff was working a full schedule to complete her tasks.   In correspondence, Mr. Donohoe made clear to Plaintiff that UCLUBDC was short-staffed and that he was being slammed with work.  It was his desire and insistence that Plaintiff come back on-site to assist with the flow of work.

56.     Upon information and belief, Mr. Donohoe did not make such a request of several other Department Director employees, and did not explore any options, other than trespassing on Plaintiff's needed accommodation.

57.     Mr. Donohoe and Ms. Clarke forced Plaintiff to obtain pre-approval to be compensated for a full-day's work.  Absent such pre-approval, Plaintiff would only be compensated for half of the hours she worked.

58.     Defendant was aware that Plaintiff was working full time because they corresponded with her about tasks she was completing.

59.     On or about March 17, 2021, Plaintiff's physician provided a release that allowed her to return to on-premises work once she had received her second COVID vaccine and had waited the sufficient period for full immunity to be achieved.

60.     The next day after giving Defendant that letter, on March 18, 2021, Ms. Clarke told Plaintiff that the sick leave balance of 74 hours on Plaintiff's paycheck stub was

"incorrect," and thus that Plaintiff's vacation balance would be deducted for the hours that Plaintiff was working from home.

61.     When Plaintiff complained about this unprecedented and unfair treatment, Ms. Clarke informed Plaintiff that the vacation and sick time allocations and calculations were entered "manually," by her and were therefore, at times, "incorrect," and further threatened Plaintiff that Ms. Clarke intended to go back in time to the beginning of Plaintiff's tenure to find more sick leave and vacation "mistakes" to deduct from Plaintiff's ledger. Plaintiff interpreted this statement as a threat.

62.     Defendant made clear that if Plaintiff wanted to be paid in accordance with her job title and exempt status, she would have to return to work on-site. Upon information and belief, this unorthodox pay scheme was an attempt to strong-arm Plaintiff into returning to work before she was fully vaccinated.

63.     Plaintiff was singled out for this treatment and other Department Directors were not subject to the same rules. On information and belief, the Director of Room Operations was granted permission to work from home in April 2020 without having to record her time as sick leave or vacation leave.

64.     Plaintiff returned to work on-site in May of 2021 and hired counsel to pursue her claims against her employer.

65.     On or about May 25, 2021, approximately thirty (30) days after Plaintiff hired counsel, and UCLUBDC and its Board of Governors were placed on notice of Plaintiff's claims via correspondence from undersigned counsel, Defendant hired a Director to place above Plaintiff, and required Plaintiff to report to him, which was effectively a demotion. Defendant did not do this to any other Director level employee.

11

66.     On or about June 24, 2021, Plaintiff tripped and fell from tripping on a rotted and raised floorboard at the facility that was an unsafe hazard in the workplace.

67.     Defendant was made aware of the many raised floorboards and the hazard it posed to workers but did not take adequate steps to repair the hazard or mitigate the threat to employees and patrons.

68.     Plaintiff fell hard and injured her ankle and arm and pulled muscles in her chest back, neck and shoulder.  She went to the emergency room for treatment and suffered severe pain and emotional distress from the incident.

69.     The full extent of Plaintiff's injuries from the fall is not known at this time, nor has she received a full diagnosis, but she has been prescribed pain killers and is suffering from severe pain in her back, neck and chest and difficulty breathing.

**CAUSES OF ACTIONS**

**INDIVIDUAL CLAIMS**

**CLAIM I**
**(Failure to Reasonable Accommodate a Disability)**
**District of Columbia Code Section § 2-14-1.01 *et seq.***

70.     Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

71.     Plaintiff is a person with a disability that was disclosed to and known by UCLUBDC.

72.     Whereas in normal circumstances, Plaintiff required little or no accommodation, her disability (COPD) made her particularly vulnerable to the COVID virus and put her in a high-risk category for exposure.

12

73.    At the time that Plaintiff asked for a reasonable accommodation of her disability, there was no better or more effective accommodation of her disability than working remotely to minimize exposure to the virus.

74.    Plaintiff's physician recommended that Plaintiff work remotely to minimize her exposure to the COVID virus on two separate occasions.

75.    Defendant was able to conduct its business without Plaintiff being physically present at the work premises.

76.    On several occasions, Plaintiff worked remotely during events at UCLUBDC.

77.    Simply wearing a mask or social distancing, while generally effective, is not and was not guaranteed to protect Plaintiff from exposure to COVID.

78.    At all times relevant to this Complaint, the Center for Disease Control (hereinafter "CDC") recommended that persons with serious underlying conditions refrain as much as possible from being in contact with others, which included recommending that employees with underlying conditions work remotely whenever possible.

79.    Several UCBLUBDC employees who wore masks and engaged in social distancing, were nevertheless exposed to and tested positive for COVID from working at an event where the guest speaker carried the virus, including Plaintiff.

80.    Defendant    failed    to    accommodate    Plaintiff's    reasonable    request    for accommodation by requiring her to work on sight during the COVID pandemic, in direct contravention of Plaintiff's doctor's recommendation.

81.    Defendant    failed    to    accommodate    Plaintiff's    reasonable    request    for accommodation by requiring her to work on site during the COVID pandemic when such was not strictly necessary.

13

82.     Defendant   failed   to   accommodate   Plaintiff's   reasonable   request   for accommodation by not assigning someone to do the on-site portion of the job, which was normally completed by employees who reported to Plaintiff and could have been done by someone other than Plaintiff.

83.     Defendant   failed   to   accommodate   Plaintiff's   reasonable   request   for accommodation by failing to give her a private office to work in to minimize exposure to COVID when she was on the premises.  Plaintiff is the only Director who was not provided a private office.

84.     Defendant failed to engage in the interactive process in good faith, and pressured Plaintiff to work on-site, thus endangering her health.

85.     As a direct and proximate cause of Defendant's violation of DC law, Plaintiff suffered serious emotional and mental stress from working at a job site that was not safe for her and could have exposed her to a virus that could easily have killed her.

86.     As a direct and proximate cause of Defendant's violation of DC law, Plaintiff suffered serious emotional and mental stress from working at a job site that was not safe, and at which Plaintiff was, in fact, exposed to COVID.

87.     The stress and fear that Plaintiff endured by having to go into a workplace that could not keep her safe, and did not take adequate measures to keep her safe, contributed to her becoming very ill from a respiratory infection and other illnesses related to a compromised immune system.

88.     Plaintiff is therefore seeking damages of not less than $500,000, in addition to interest, costs and reasonable attorney fees.

14

CLAIM II
**(Disability Discrimination/Disparate Treatment)**
**District of Columbia Code Section § 2-14-1.01 *et seq.***

89.    Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

90.    On several occasions, Defendant made clear to Plaintiff that it was displeased and did not wish to accommodate her disability by allowing her to work remotely.

91.    Both Ms. Clarke and Mr. Donohoe stated to Plaintiff that UCLUBDC did not have a "work from home policy," repeatedly ignoring that Plaintiff was not working from home in accordance with any UCLUBDC policy, but rather as a reasonable accommodation of her disability.

92.    Both Ms. Clarke and Mr. Donohoe decided that they would not pay Plaintiff for a full day's work if she was working remotely, as was necessitated by her disability, and thus started docking her half of her pay for work she completed remotely.

93.    At all times relevant, Plaintiff was classified as an exempt employee, and should not have been docked for any work time.

94.    Both Ms. Clarke and Mr. Donohoe made clear that Plaintiff would have been compensated for the hours she worked if she had worked them on-site.

95.    Mr. Donohoe and Ms. Clarke discriminated against Plaintiff in pay practices because she had to work from home as an accommodation of a disability.

96.    On information and belief, employees who did not require the same accommodation were treated differently.

97.    Defendant's disparate treatment of Plaintiff was unlawful and caused her significant stress and anxiety.

15

98.    Because Plaintiff suffers from an autoimmune disorder, increased stress is detrimental to her health and contributed to and exacerbate illnesses she endured.

99.    Plaintiff is therefore seeking damages of not less than $500,000, in addition to interest, costs and reasonable attorney fees.

### CLAIM III
### (Retaliation Based on Need for Reasonable Accommodation)
### District of Columbia Code Section § 2-14-1.01 *et seq.*

100.    Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

101.    During all times relevant to this Complaint, Plaintiff was classified as a full-time exempt employee.

102.    Plaintiff, like all other employees, earned and accrued sick time and vacation time as compensable time off.

103.    Defendant forced Plaintiff to relinquish her paid time off in order to be paid for the work she was performing.

104.    Defendant made clear that if Plaintiff came onto the premises to do the same work, she would not have to relinquish her sick leave and vacation time.

105.    Defendant was aware that Plaintiff was working remotely as a reasonable accommodation for her disability.

106.    When Plaintiff complained about the decision to dock her pay, Ms. Clarke warned Plaintiff that she would go back in time and "find" more sick leave and vacation time to dock from Plaintiff, alleging that other clerical errors on Ms. Clarke's part could have occurred because Ms. Clarke entered vacation and sick time "manually."

16

107.    Plaintiff interpreted Ms. Clark's comment as a threat or promise to take additional negative pay calculation actions.

108.    Defendant's decision to dock Plaintiff for working from home was punitive, retaliatory and designed to financially pressure Plaintiff into risking her health in order to work on site.

109.    Defendant's actions were unlawful and without justification and caused Plaintiff mental and emotional stress.

110.    Plaintiff is therefore seeking damages of not less than $500,000, in addition to interest, costs and reasonable attorney fees.

## CLAIM IV
### (Race & Gender Discrimination/Disparate Treatment)
### District of Columbia Code Section § 2-14-1.01 *et seq.*

111.    Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

112.    Plaintiff is the only African American woman Department Director at UCLUBDC.

113.    Plaintiff was the only Director not given a private office from which to conduct business, and which would have also mitigated to some extent her exposure to COVID.

114.    On information and belief, Plaintiff was paid less than the other Directors, and received less in bonus and benefits than the other Directors.

115.    On information and belief, other Directors did not take a pay cut during the COVID pandemic, whereas Plaintiff's salary was cut by 25%.

116.    Plaintiff was singled out for her hours to be docked and was forced to relinquish earned and accrued sick time and vacation time.   On information and belief, other

17

Department Directors, Managers, or Coordinators were not docked pay when they worked remotely.

117.    Plaintiff was forced to seek pre-approval from Mr. Donohoe to be compensated for the work she needed to complete to do her job.

118.    Mr. Donohoe was aware that Plaintiff knew her job and had no legitimate reason to require Plaintiff to seek pre-approval to be compensated for her work.

119.    On information and belief, Plaintiff was singled out and treated differently than other Department Directors in having to seek pre-approval to be compensated for her work.

120.    Importantly, Plaintiff did not need to seek pre-approval from Mr. Donohoe to do the work, only to be fully and fairly compensated for doing the work.

121.    Plaintiff was subjected to this requirement when other Department Directors, were not, because she is an African American woman.

122.    As a direct and proximate cause of Defendant's race and gender discrimination against Plaintiff, Plaintiff suffered financial losses and emotional and mental stress and anguish.

123.    Plaintiff is therefore seeking damages of not less than $500,000, in addition to interest, costs and reasonable attorney fees.

CLAIM V
**(Race & Gender Discrimination/Retaliation)**
**District of Columbia Code § 2-14-1.01 *et seq.***

124.    Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

125. Plaintiff complained directly to the UCLUBDC General Manager, Mr. Donohoe and to Ms. Clark, the Human Resources Manager, about the way she was being treated.

126. On several occasions, Plaintiff raised concerns about feeling threatened and pressured to return to work when other non-African American women Directors were not treated that way.

127. When Plaintiff raised concerns about being under-staffed and under-resourced in her department prior to the pandemic, Ms. Clarke threatened to demote Plaintiff and cut her pay by $27,000.

128. Plaintiff's pay was docked, and she was treated more harshly than similarly situated Department Directors in retaliation for complaining about the way she was being treated.

129. As a direct and proximate cause of Defendant's retaliation against Plaintiff for complaining about and opposing Defendant's race and gender discrimination against her, Plaintiff suffered financial losses and emotional and mental stress and anguish.

130. Defendant also *de facto* demoted Plaintiff as retaliation for her complaining about Defendant's unlawful race and gender discrimination by hiring someone over her and making her report to the new hire, who knew nothing about the operations of UCLUBDC, thus making Plaintiff the only Department Director with a direct supervisor other than the General Manager.

131. Plaintiff is therefore seeking damages of not less than $500,000, in addition to interest, costs and reasonable attorney fees.

CLAIM VI
**(Wage Theft)**
**DC Wage Theft Prevention Act § 32-1308 *et seq.***

132.   Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

133.   Plaintiff is classified as a full-time employee, who was never asked, and never agreed to convert to part-time employment status.

134.   Plaintiff is an exempt employee who has never received overtime pay for work she did in excess of 40-hours per week.

135.   Plaintiff is an exempt employee who has never received overtime pay for work she did in excess of 8 hours per day.

136.   Plaintiff earned and accrued paid sick leave and vacation time in accordance with UCLUBDC's employee handbook policies.

137.   Defendant forced Plaintiff to work without being compensated for her work, and instead required her to relinquish accrued paid sick time and vacation time in order to receive payment for her work.

138.   Defendant was aware that Plaintiff was engaged in compensable work for the time she was being forced to relinquish accrued paid time off.

139.   Defendant needed the work Plaintiff completed to be done, and informed Plaintiff that her tasks needed to be completed for Defendant's benefit.

140.   Defendant's demand that Plaintiff work without being paid for her work was unlawful and constitutes wage theft.

141.   Plaintiff therefore seeks treble damages, fees, costs, attorney's fees and the maximum compensation allowed by District of Columbia law.

20

CLAIM VII
**(Wage Theft/Retaliation)**
**DC Wage Theft Prevention Act § 32-1308 *et seq.***

142. Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

143. On several occasions, Plaintiff complained to Mr. Donohoe and Ms. Clarke that being forced to relinquish earned and accrued paid sick leave and vacation time was unfair to her.

144. In response, Ms. Clarke threatened to go back through all of Plaintiff's earnings statements to find more accrued sick leave and vacation days to force Plaintiff to relinquish.

145. Ms. Clarke's comment and threat was made to intimidate and silence Plaintiff and to force her to stop opposing and objecting to Defendant's unlawful pay practices.

146. Defendant also *de facto* demoted Plaintiff as retaliation for her complaining about Defendant's unlawful pay practices, by hiring someone over her and making her report to the new hire who knew nothing about the operations of UCLUBDC, thus making Plaintiff the only Department Director with a direct supervisor, other than the General Manager.

147. As a direct and proximate cause of Defendant's retaliation against Plaintiff, Plaintiff suffered financial losses, and mental and emotional stress and anxiety.

148. Plaintiff therefore seeks treble damages, fees, costs, attorney's fees and the maximum compensation allowed by District of Columbia law.

21

CLAIM VIII
**(Failure to Pay Accrued Sick Leave)**
**District of Columbia Code § 32-531.01** *et seq.*

149.    Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

150.    Defendant is an employer in the District of Columbia subject to the Accrued Sick and Safe Leave Act of 2008.

151.    By forcing Plaintiff to relinquish accrued sick leave for purposes other than being off work for actually being sick, or for any purpose enumerated in the District of Columbia Sick and Safe Leave Act, Defendant functionally abrogated Plaintiff's sick leave altogether.

152.    Defendant's actions were unlawful and deprived Plaintiff of the use of her sick leave as intended by District of Columbia law.

153.    Defendant was aware that Plaintiff suffers from a medical condition and disability that requires her to periodically seek medical care, including appointments with medical providers.

154.    By depriving Plaintiff of sick leave that she could use for such medical care, in order for her to be paid for compensable work, Defendant placed Plaintiff in a position where future medical appointments or illness would be non-compensable.

155.    Defendant's actions violated the law and caused Plaintiff unnecessary anxiety and stress.

156.    Plaintiff therefore seeks the maximum compensation allowable by law for Defendant's violation of District of Columbia law.

CLAIM IX
**(Retaliation for Objecting to a Failure to Pay Accrued Sick Leave)**
**District of Columbia Code § 32-531.01 et seq.**

157.    Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

158.    On several occasions, Plaintiff complained to Mr. Donohoe and Ms. Clarke that being forced to relinquish earned and accrued paid sick leave and vacation time was unfair to her.

159.    In response, Ms. Clarke threatened to go back through all of Plaintiff's earnings statements to find more accrued sick leave and vacation days to force Plaintiff to relinquish.

160.    Ms. Clarke's comment was made to intimidate and silence Plaintiff and to force her to stop opposing and objecting to Defendant's unlawful pay practices.

161.    Defendant also *de facto* demoted Plaintiff as retaliation for her complaining about Defendant's unlawful pay practices by hiring someone over her and making her report to the new hire who knew nothing about the operations of UCLUBDC, thus making Plaintiff the only Department Director with a direct supervisor, other than the General Manager.

162.    As a direct and proximate cause of Defendant's retaliation against Plaintiff, Plaintiff suffered financial losses, and mental and emotional stress and anxiety.

163.    Plaintiff therefore seeks the maximum compensation allowed by District of Columbia law.

## CLAIM X
### (Negligent Infliction of Emotional Distress)

164.     Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

165.     Plaintiff suffers from COPD, which is a chronic autoimmune disease of the lungs and respiratory system. Defendant was informed of Plaintiff's condition and was advised by her health care provider to allow Plaintiff to work remotely to minimize her exposure to COVID.

166.     The CDC published guidance that strongly advised those with underlying conditions, especially with conditions affecting the heart and lungs, such as asthma and COPD, to take maximum precautions, because the coronavirus was much more likely to cause severe illness requiring hospitalization and often death in those with such underlying conditions.

167.     Despite both the recommendation of Plaintiff's health care provider and the CDC, Defendant insisted that Plaintiff be on-site for events, instead of delegating those duties to another employee.

168.     On or about November 10, 2020, as a direct result of Defendant's demand, Plaintiff was exposed to COVID while working an event at UCLUBDC.

169.     Four days later, Plaintiff became very ill with a respiratory infection, and eventually with shingles and other complications.

170.     Defendant did not tell Plaintiff that she was exposed to COVID until on or about November 23, 2020.

24

171.    Given her symptoms and illness, for weeks Plaintiff reasonably believed she was suffering from COVID. This caused her extreme stress and anxiety and exacerbated and contributed to the severity and duration of her illness.

172.    Mr. Donohoe was aware of Plaintiff's disability and demonstrated callous disregard for her wellbeing in choosing to remain silent about her exposure to COVID.

173.    Plaintiff's illness lasted more than five weeks and caused her severe pain and physical discomfort.

174.    Defendant's negligence in failing to inform Plaintiff of her exposure to COVID was outrageous and without justification.

175.    As a direct and proximate cause of Defendant's negligence, Plaintiff suffered severe pain, and extreme fear, anxiety and mental anguish.

176.    Plaintiff is therefore seeking damages of not less than $500,000, in addition to interest, costs and reasonable attorney fees.

CLAIM XI
**(Negligence)**

177.    Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

178.    On or about June 23, 2021, Plaintiff tripped on a rotted and raised floorboard on the roof of Defendant's premises and tripped.

179.    Defendant was aware of the hazardous condition on the roof long before June 23, 2021, but failed to repair the floorboard or take other adequate measures to ensure guests and staff did not walk on it.

180.    Defendant's inaction to mitigate the risk of injury to its staff falls well below the standard for District of Columbia businesses.

25

181.    As a result of the fall, Plaintiff suffered injuries to her ankle, arms and wrists, shoulders, neck and back.  She went to the emergency room after the accident to seek treatment.

182.    The full extent of Plaintiff's injuries is not known at this time.  However, Plaintiff was prescribed pain killers, and her arm was placed in a sling.  She has had to return to the emergency room after suffering severe pain in her neck, upper back and chest, and is having difficulty breathing.

183.    Plaintiff therefore seeks compensation for all out-of-pocket expenses related to the medical care for her injuries, and further seeks compensation for her pain and suffering of not less than $500,000.

## CLAIM XII
### (Negligent Supervision)

184.    Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

185.    Plaintiff suffered damages, negative health consequences, emotional distress and extreme anxiety as a direct and proximate cause of Mr. Donohoe and Ms. Clarke's unlawful and tortious actions.

186.    The Board of Governors of UCLUBDC had a legal obligation to monitor and correct Mr. Donohoe and Ms. Clarke's actions to ensure that they did not break District of Columbia laws and/or engage in tortious conduct.

187.    Plaintiff alleges that the Board of Governors is liable for Mr. Donohoe and Ms. Clarke's actions under the principle of *respondeat superior*.

188.    Plaintiff alleges that the Board of Governors is liable for all claims contained herein under the principle of *respondeat superior*.

26

189.    Plaintiff therefore asserts that the Board of Governors and each of them is jointly and severally liable for the actions of their employees, Mr. Donohoe and Ms. Clarke.

190.    Plaintiff seeks damages against the Board of Governors and each of them, jointly and severally, in an amount not less than $500,000, including interest, costs and reasonable attorney's fees.

## COLLECTIVE CLAIMS

### CLAIM XIII.
### (Wage Theft Improper Record Keeping)
### DC Wage Theft Prevention Act § 32-1308 *et seq.*

191.    Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

192.    District of Columbia law requires that all employers keep accurate records of the earnings of employees, including records of earned and accrues paid time off.

193.    Ms. Clarke stated to Plaintiff that sick leave and vacation time are calculated and entered manually by Ms. Clarke and are subject to error, that Ms. Clarke felt she could "correct," by going back over Plaintiff's employment and deducting additional accrued paid time off.

194.    This sort of "manual" and inaccurate record keeping violates District of Columbia law.

195.    On information and belief, this form of casual record keeping was not limited to Plaintiff and extended to other employees as well.

196.    On behalf of herself and all other similarly situated employees whose vacation and sick day calculations were done "manually" by Ms. Clarke, Plaintiff asserts a

27

collective claim for a pattern and practice of violating District of Columbia wage payment and record keeping laws.

197.    On behalf of herself and all other similarly situated employees, Plaintiff seeks all compensatory and injunctive remedies available by law and deemed appropriate by this Court.

CLAIM XIV
**(Failure to Pay Accrued Sick Leave)**
**District of Columbia Code § 32-531.01 et seq.**

198.    Plaintiff reasserts all allegations in the previous paragraphs as if fully restated herein.

199.    Defendant is an employer in the District of Columbia subject to the Accrued Sick and Safe Leave Act of 2008.

200.    By forcing Plaintiff to relinquish accrued sick leave for purposes other than being off work for actually being sick, or for any purpose enumerated in the District of Columbia Sick and Safe Leave Act, Defendant functionally abrogated its sick leave pay obligation altogether.

201.    Defendant's actions were unlawful and deprived Plaintiff of the use of her sick leave as intended by District of Columbia law.

202.    On information and belief, Plaintiff was not the only employee of UCLUBDC subjected to Defendant's unlawful usurpation of accrued sick leave.

203.    On information and belief, Plaintiff asserts herein that Defendant had a pattern and practice of depriving or usurping employees of accrued sick leave.

204.    On information and belief, Ms. Clarke and Mr. Donohoe forced one other employee to have to relinquish their sick leave in order to be paid for compensable work.

28

205.   On behalf of herself and all other similarly situated employees, Plaintiff seeks all compensatory and injunctive remedies available by law and deemed appropriate by this Court.

### *AD DAMNUM* CLAUSE

As a direct and proximate cause of Defendant's unlawful discrimination and retaliation against Plaintiff, its negligence, negligent infliction of emotional distress, and is violation of District of Columbia wage theft and sick leave laws, Plaintiff has suffered severe mental anguish, physical pain and injury, and severe mental and emotional stress. She has also lost wages and has been constructively demoted.  Therefore, on her own behalf, Plaintiff seeks damages of not less than $500,000, interest, costs and reasonable attorney's fees.  As a result of the UCLUBDC Board of Governors' negligent supervision of Mr. Donohoe and Ms. Clarke, Plaintiff seeks damages from the Board of Governors and each of them jointly and severally, in an amount of not less than $500,000.  Also, on behalf of herself and all other UCLUBDC employees who were subject to any unlawful pay and sick leave practices of Ms. Clarke and Mr. Donohoe, Plaintiff seeks compensatory, injunctive and declaratory relief and all other remedies deemed appropriate by this Court.

### JURY DEMAND

Plaintiff seeks and demands a trial by jury.

Respectfully submitted,


_/s/ Donald M. Temple_
Donald M. Temple (D.C. Bar#408749
Pamela M. Keith (D.C. Bar #448421)
Law Offices of Donald Temple
1310 L St. NW, Suite 750
Washington, DC 20005
pamkeithtemplelaw@gmail.com
dtemplelaw@gmail.com
202-628-1101 (O)
202-217-2774 (F)
202-302-0383 (M)
_Attorneys for Plaintiff Wenda Harbour_